Ellsworth et ux. *v.* Husband, Appellant.

246

Argued March 7, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Felix W. Bolowicz,* for appellant.

*T. G. Wadzinski,* with him *Henry A. Gordon,* for appellees.

OPINION BY PARKER, J., October 2, 1935:

This is an action brought by the plaintiffs, grantors in a deed, to recover from defendant, the grantee, a sum which plaintiffs allege they were compelled to pay in settlement of a mortgage subject to which the conveyance was made. The issue raised was submitted to a

jury which found for the defendant and the court subsequently entered judgment n. o. v. for plaintiffs. Questions of substantive law and practice are raised on this appeal and it will be necessary to refer to the pleadings and proofs in some detail to show the precise questions raised.

Elijah M. Ellsworth and wife conveyed to Thomas Husband a parcel of land and, as a part of the consideration moving from purchaser to seller, made the conveyance "subject to the payment" of a mortgage of six thousand dollars given to Ralph Major and wife, for the payment of which mortgage the plaintiffs were personally liable. Defendant failed to pay the mortgage as he had agreed to do and the mortgagees, by a proceeding begun by a writ of scire facias, foreclosed the mortgage with the result that the premises were conveyed by the sheriff to the mortgagees for a consideration of $109.90, a sum sufficient to pay the costs of the sale but leaving nothing to apply on the mortgage indebtedness. The mortgagees then entered the judgment bond which the mortgage was given to secure and caused an execution to be issued against plaintiffs for a balance then due amounting to $6,585. The facts so far stated were proven by documentary evidence, deeds, mortgages, and court proceedings and are not in dispute. Plaintiffs thereupon settled with the mortgagees for the sum of $2,300, paying $1,500 in cash and giving a judgment note for the balance of $800. To establish such payment the plaintiffs produced a cancelled check for $1,500, a receipt from the mortgagees for $2,300 in full satisfaction of the mortgage, and Dr. Ellsworth testified that the note for the balance of $800 was delivered to the mortgagees but had not been paid at the time of the trial. We understand from the argument on behalf of defendant that these additional facts are not disputed. The plaintiffs made claim for the amount so paid with interest.

The defendant in his affidavit of defense alleged a

number of matters which he made no effort to sustain by proofs, but relied at trial upon evidence intended to show that plaintiffs did not in good faith make the alleged settlement with the mortgagees for $2,300. To establish this defense the defendant, over the objection of plaintiffs, offered the evidence of two real estate experts to the effect that the land, at the time of the sheriff's sale, was worth more than $8,000 and consequently more than the amount of the deficiency judgment and, by cross-examination of one of the plaintiffs, showed that defendant had paid for the property originally a sum likewise more than the amount of the deficiency judgment and that considerable improvements had been made on the buildings located on the land after such purchase; and also evidence that counsel for the plaintiffs, by their direction, prior to the sale by the sheriff wrote to the defendant advising him of his default and of the claim by the mortgagees, stating in such letter: "The Majors intend to look to Ellsworth and wife for the payment of this mortgage, or such part of the above amount as is left after crediting thereon the fair market value of the property which they purchased at the sheriff's sale. I have an impression that the whole matter may be settled with the Majors upon the payment to them of approximately $2,500 in cash, and they retain title to the property." It also appeared from the proofs that neither plaintiffs nor defendant bid at the sheriff's sale or made any other effort to secure a greater price for the land than was bid and thus decrease the amount of the deficiency judgment. The trial judge, in his charge presenting the issue to a jury, said, inter alia: "If, from the evidence, you find that Ellsworth in good faith made this settlement with Major in satisfaction of the claim of Major against him, then this plaintiff, Ellsworth, is entitled to recover that sum, $2,300, with interest from March 4, 1931, from this defendant." The jury found

for the defendant and the court subsequently entered judgment for plaintiffs n. o. v.

The liability of the plaintiffs to the mortgagees on their judgment bond, under the circumstances, was measured by the difference between the balance due on the bond and the sum realized on the sale of the land under the sheriff's sale in the foreclosure proceedings, and as nothing was realized the plaintiffs were liable for the balance due, to wit, $6,585. This principle is well settled in this and other states: Lomison v. Faust, 145 Pa. 8, 23 A. 377; Mollenauer v. Smith, 51 Pa. Superior Ct. 517; Bohde v. Lawless, 33 N. J. Eq. 412. This is true though the land has been improved since the mortgage was given and the land was sold to the mortgagees for a trifle: Lomison v. Faust, supra; and even though the plaintiffs failed to defend the foreclosure proceedings and neglected to bid upon the property at the sheriff's sale: Greenspan v. Margolis, 70 Pa. Superior Ct. 373. The plaintiffs having conveyed the land to the defendant subject to the payment of the $6,000 mortgage, which represented a part of the consideration to be paid by defendant to plaintiffs, and defendant having defaulted in the payments he agreed to make, the defendant became liable to the plaintiffs when they were called upon to pay the sum for which they were liable to the mortgagees and in good faith paid such sum: Greenspan v. Margolis, supra; Britton v. Roth, 313 Pa. 352, 356, 169 A. 146; Lowry v. Hensal, 281 Pa. 572, 127 A. 219. The Act of June 12, 1878, P. L. 205 (21 PS 655), is not applicable, as that act applies "to relations between the grantee and the holder of the incumbrance": May's Estate, 218 Pa. 64, 70, 67 A. 120. It follows, as the court below held in its opinion entering judgment for the plaintiffs, that the evidence received as to the market value of the land at the time the sheriff's sale took place was irrelevant.

Where a grantee takes land subject to an encumbrance, the amount of which has been deducted from

an agreed price, "the covenant to be inferred from it is that of indemnity for the protection of the grantor," but he cannot recover until it appears that he has suffered an actual loss: Faulkner v. McHenry, 235 Pa. 298, 301, 83 A. 827; for the indemnity is against *loss* by reason of liability and not by reason of mere liability. "In order to entitle an indemnitee to recover upon a contract of indemnity against a loss or damage involving payment, it is sufficient that he has given his own note in settlement of his liability, where such note is accepted as a payment, although the note so given has not yet been paid": 31 C. J. 440. "That an obligation such as a note or a mortgage may operate as payment when so intended by the parties has been recognized by us in Kemmerer's App., 102 Pa. 588, and Phila. v. Stewart, 195 Pa. 309, and by the Superior Court in Hummelstown Brownstone Co. v. Knerr, 25 Pa. Superior Ct. 465": Borowsky v. Margulis, 310 Pa. 420, 424, 165 A. 491. The payment and the amount were shown primarily by the production of a receipt from the mortgagees to the plaintiffs in the following form: "4th March, 1931. Received from E. M. Ellsworth and Laura E. Ellsworth by check fifteen hundred dollars and by note at three months eight hundred dollars, total twenty-three hundred dollars, in settlement of liability on judgment No. 892 December Term, 1930, which judgment is to be satisfied on record at the request of said E. M. Ellsworth and Laura E. Ellsworth, his wife." As we have indicated, the settlement as made is not disputed but the good faith of the settlement alone is attacked.

The defendant also sought to show lack of good faith on the part of the plaintiffs in making settlement with the mortgagees by producing a letter from counsel for plaintiffs to the defendant calling particular attention to the excerpt which we have quoted with reference to market value. After the sheriff's sale had taken place

and before settlement was made by plaintiffs with the mortgagees, counsel for the plaintiffs wrote a letter to the defendant advising him that the property had been sold; that the Majors intended to look to Ellsworth and wife for the payment of the mortgage; that defendant should attempt to make settlement with the Majors as he would be ultimately liable; and that plaintiffs believed settlement could be made for about $2,500, thereby giving a credit of approximately $4,500 for what was believed to be the fair market value of the property. It must be borne in mind that both plaintiffs and defendant were at the mercy of the mortgagees after the sale was consummated by the sheriff and could secure such reduction only as they could persuade the Majors that they should in good conscience allow. The suggestion contained in the letter as to any allowance that would be made on account of the fair market value of the property did not amount to an agreement to allow a credit for what might be shown to be the true market value, or even that the Majors would make any allowance. It was only natural that an appeal should be made for relief on that ground, but it was still a matter to be determined by the Majors. We are unable to discover in this correspondence any indication of lack of good faith upon the part of the plaintiffs, and we deem it insufficient to submit to the jury on that question.

It appearing that the evidence of the defendant attacking the good faith of the settlement was insufficient to submit to a jury, should the motion for judgment n. o. v. have been granted or should a new trial have been awarded? The appellant first contends that the court, as the record stood, did not have authority to enter judgment n. o. v. for the reason that when the motion was made by plaintiffs for judgment the court below declined to order the evidence to be transcribed and it was not, in fact, certified and filed of record

until after the court had entered judgment for the plaintiffs. It is urged that this was not a strict compliance with the terms of the Act of April 22, 1905, P. L. 286 (12 PS 681), which provides that when a point requesting binding instructions has been reserved or declined, the party presenting the point may, within the time prescribed for moving for a new trial or within such other or future time as the court shall allow, "move the court to have all the evidence taken upon the trial duly certified and filed so as to become part of the record, and for judgment non obstante veredicto upon the whole record; whereupon it shall be the duty of the court, if it does not grant a new trial, to so certify the evidence, and to enter such judgment as should have been entered upon that evidence." If the evidence had not been made part of the record when this appeal was taken the point would have merit, for it would be impossible to determine the issue without the evidence. (See McCord v. B. & O. R. Co., 187 Fed. 743, a case decided by a circuit court of appeals before the decision of the Federal Supreme Court in Slocum v. New York L. Ins. Co., 228 U. S. 364, 33 S. C. Rep. 523, wherein it was held that the Act of 1905 was not applicable to proceedings in the federal courts.)

However, it appears from the record that while judgment was originally entered on September 4, 1934, the court on September 11, 1934, after petition, ordered the testimony transcribed and filed and directed that a reargument of the motion be had and that the testimony was so filed on September 19 and the case reargued. Thereafter the court made this order: "Now, December 3, 1934, we conclude that judgment non obstante veredicto in favor of the plaintiffs was properly entered by the court on September 4, 1934." We are of the opinion that the reargument, reconsideration by the court, and orders subsequently made after the testimony was filed cured any irregularity. It would seem that opportunity

having been given to appellant to have the full benefit of the transcribed record and the matter having been reargued, reconsidered by the court, and the decision having been made after the evidence had actually been certified and filed, before time had expired for appealing to this court and while the lower court had full control over the record, the full purpose and intent of the provisions of the act were accomplished.

Appellant further contends that in granting the motion for judgment the court did not act on the record as it stood at the close of the trial in that it considered the evidence as if a portion thereof had been deleted. In the opinion entering judgment, the court below referred to the evidence of the real estate experts as to the value of the land and the purchase price of the property when sold by plaintiffs to defendant, received over the objection of plaintiffs, and said that such evidence was clearly inadmissible, "with the testimony, improperly admitted at trial, out of the case, there was not one scintilla of evidence," and plaintiffs were entitled to binding instructions.

We do not believe that the presence of this evidence in the record prevented the entry of the judgment. In the leading case of Dalmas v. Kemble, 215 Pa. 410, 412, 64 A. 559, Mr. Chief Justice MITCHELL said: "It [Act of 1905] broadens the power of the judge in this respect, that whereas heretofore the verdict was required to be for the plaintiff and the reservation to be of leave to enter judgment for the defendant non obstante, now what is reserved is a request for binding direction to the jury and may be for either plaintiff or defendant. But though thus enlarged so as to include both parties, the power of the judge is the same as it was before. He is 'to enter such judgment as should have been entered upon that evidence,' or in other words to treat the motion for judgment as if it was a motion for binding directions at the trial, and to enter judgment as if such

direction had been given and a verdict rendered in accordance. What the judge may do is still the same in substance, but the time when he may do it is enlarged so as to allow deliberate review and consideration of the facts and the law upon the whole evidence. If upon such consideration it shall appear that a binding direction for either party would have been proper at the close of the trial the court may enter judgment later with the same effect." Examining the situation in the light of such statement of the law, the true test of the right to enter judgment n. o. v. is whether at the close of the trial the court could have entered the judgment which it later did. At that time, the evidence of the experts and the cross-examination of the plaintiff were part of the record, but granting such to be the case and even admitting the true state of facts to be that the property in question was of a market value greater than that of the deficiency judgment, still under the law the plaintiff was entitled to recover. Expressed in another way, allowing the evidence to stand as part of the record, the plaintiff was still entitled to recover.

The case of Amer. Car & Fdy. Co. v. Alexandria Water Co., 221 Pa. 529, 70 A. 867, presented a situation similar to the one here involved. There the proceeding was a scire facias sur mechanic's lien and defendant denied liability, claiming that the plaintiff had accepted notes in payment of the balance due and thereby lost the right to file a mechanic's lien. These notes were held by one Lowery, a representative of the company, and judgment was obtained for the company on them. With this evidence on the record, the jury rendered a verdict for the defendant and the court below subsequently entered judgment n. o. v. for the claimants, it appearing that defendant had not only failed to show that Lowery had any authority to agree that the note should be considered as payment, but in fact produced some evidence showing that he did not possess such

power. The Supreme Court sustained the entry of a judgment n. o. v., notwithstanding the presence of this evidence. There, as here, there was evidence on the record at the close of the trial which had not been properly admitted, but in each case the evidence so received was irrelevant.

It does not follow that a party is always entitled to a judgment n. o. v. on the basis of the record as it stood at the close of the trial. As was pointed out by Judge LINN (now Mr. Justice LINN) in the case of Nixon v. Watkins, 100 Pa. Superior Ct. 178, 181, the Act of 1905 provides that in disposing of a motion for judgment n. o. v., "it shall be the duty of the court, *if it does not grant a new trial,* to so certify the evidence, and to enter such judgment as should have been entered on the evidence." (Italics supplied.) The words of the act clearly indicate the intention of the legislature not to interfere with the right to grant a new trial where justice demands such course. Cases have frequently arisen, as in the Nixon case, where justice was best served by granting a new trial. In Gordon v. Blizard, 106 Pa. Superior Ct. 112, 163 A. 43, the witness was permitted to use a record for the purpose of stimulating his memory. We held that the defendant's objection to the use of it should have been sustained and his motion to strike out the testimony grounded upon it should have been granted, and that the remedy was a new trial and not a peremptory judgment. Also, see Sabin v. Michaelsen, 72 Pa. Superior Ct. 226. Such situations have frequently arisen where evidence which was relevant was not sustained by competent proofs and a party was permitted to rely upon the judgment of the court, and in such cases a new trial gave the opportunity to furnish other competent proofs.

We are unable to discover in the record any reason why a new trial should be had and hold that the judgment was properly entered.

Judgment affirmed.